IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MOSE LEE SUDDUTH, JR.                                                                      PLAINTIFF

V.                                                                 CIVIL ACTION NO. 1:18-CV-51-SA-DAS

LOWNDES COUNTY, MISSISSIPPI,
ROGER COLEMAN, and
NORTH ATLANTIC SECURITY COMPANY                                                DEFENDANTS

ORDER AND MEMORANDUM OPINION

On March 19, 2018, Mose Lee Sudduth, Jr., filed his Complaint [1] in this Court, asserting claims against Lowndes County, Mississippi; North Atlantic Security Company, the security company hired by Lowndes County to provide security at its Justice Court building; and Roger Coleman, one of North Atlantic's security guards. On February 28, 2019, the Court entered an Order and Memorandum Opinion [40], explaining the deficiencies of the Plaintiff's Complaint [1] and directing the Plaintiff to file a more definite statement in the form of an amended complaint within fourteen days. On March 14, 2019, the Plaintiff filed his Amended Complaint [42]. Coleman then filed a Motion to Dismiss for Failure to State a Claim [66], arguing that the Plaintiff's Amended Complaint [42] still falls to satisfy the applicable pleading standard. The Motion [66] has been fully briefed, and the Court is prepared to rule.

*Factual and Procedural Background*

The factual allegations contained in the Plaintiff's Amended Complaint [42] are largely unchanged from those contained in his original Complaint [1]. Although the Court previously set forth the relevant facts in its earlier Order and Memorandum Opinion [40], it will nevertheless recite them again below.

Lowndes County contracts with a private company, North Atlantic Security, to provide security at its Justice Court building. On May 24, 2018 Sudduth entered the Lowndes County Justice Court building wearing shorts, a t-shirt, flip flops, and a baseball hat. The entrance to the building consists of two sets of double glass doors that open into a hallway. In the hallway just inside the double doors is a small security guard office. A metal detector stands on the opposite side of the hallway with an unobstructed pathway between the metal detector and the security office door. Further down the hall is a glass bank-teller style window that opens into the Justice Court Clerk's office.

Sudduth entered the building carrying a single piece of paper in one hand. As he entered the building, the security guard on duty, Coleman, stepped out of the office and directed Sudduth to pass through the metal detector. Sudduth waved him off saying "I'm an attorney." Sudduth proceeded to the Clerk's office window and passed his paper beneath the glass, asking the Clerk to file it for him. Coleman followed Sudduth to the Clerk's window and insisted that he pass through the metal detector. Sudduth refused, but did surrender a pocketknife that he was carrying in the pocket of his shorts. The two men continued to argue, even after the Clerk confirmed that Sudduth was indeed an attorney. Sudduth continued to refuse to pass through the metal detector, or to leave the building, and demanded that Coleman return his knife. After Sudduth refused to comply with Coleman's demands that he leave the building, Coleman told Sudduth, "I'm asking you one more time to leave," and Sudduth again refused. Coleman tackled Sudduth to the floor and dragged him by one arm through both sets of double doors. Coleman left Sudduth on the sidewalk in front of the building and then locked the front doors to the building.

Because Sudduth's original Complaint [1] constituted a "shotgun pleading" that failed to comply with the applicable pleading standard, the Court entered an Order and Memorandum

2

Opinion [40] directing the Plaintiff to file a more definite statement in the form of an amended complaint within fourteen days.

Sudduth thereafter filed his Amended Complaint [42]. In his Amended Complaint [42], Sudduth alleges that Coleman acted under color of state law and is therefore liable, pursuant to 42 U.S.C. § 1983, for violating his Fourth and Fourteenth Amendment rights. He also alleges that Lowndes County is liable for these violations because it, in accordance with its well-settled policy, improperly delegated its duty to protect the Justice Court building to North Atlantic, a company which did not have employees who were qualified to properly protect the building. He ultimately alleges that Lowndes County and North Atlantic's inadequate policy of permitting untrained personnel to provide security at the Justice Court building was the driving force behind the purported violations of his constitutional rights. Finally, Sudduth asserts a myriad of state law claims against the Defendants, including assault, battery, wrongful arrest, false imprisonment, outrageous conduct, negligence, gross negligence, and intentional infliction of emotional distress against Coleman and North Atlantic.

In his Motion to Dismiss for Failure to State a Claim [66], Coleman avers that Sudduth's Amended Complaint [42] still falls below the applicable pleading standard. The other Defendants later filed Joinders [79, 80] to Coleman's filings. The Motion [66] is ripe for review.

*Rule 12(b)(6) Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to assert by motion the defense of "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In the context of a Rule 12(b)(6) motion, the reviewing court must "liberally construe the complaint in favor of the plaintiff and accept all well-pleaded factual allegations as true." *Colony Ins. Co. v.*

*Peachtree Const., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (citing *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005)).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, L. Ed. 2d 929 (2007)). "While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions." *Smith v. Michael Jedynak Substitute Trustee Morris & Assoc. Wells Fargo Bank N.A.*, 2015 WL 13015997 at *2 (N.D. Miss. Jan. 28, 2015) (citing *Twombly*, 550 U.S. at 555). "[A]nd a formulaic recitation of the elements of a cause of action will not do." *Studdard v. Carlock Nissan of Tupelo, Inc.*, 2008 WL 11342893 at *1 (N.D. Miss. Apr. 7, 2008) (citations omitted). Nevertheless, "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted).

*Analysis and Discussion*

Coleman argues that the Plaintiff's federal claims, as well as his state law claims, should be dismissed. The Court will address these arguments in turn.

I. *Federal Claims*

As to Sudduth's federal claims, Coleman asserts that "Plaintiff's Amended Complaint specifically acknowledges that Coleman is not a state employee, but a private actor . . . And while it is true that a private actor may be held liable under § 1983 if they are 'willing participants in joint activity with the State or its agents,' Plaintiff has wholly failed to allege this necessary element in support of how Coleman's private actions are attributable to the state." [67, p. 3] (citations omitted). In response, Sudduth points to specific factual allegations in his Amended Complaint [42], wherein he asserts that North Atlantic contracted with Lowndes County to provide

security at the Justice Court building. Sudduth contends that North Atlantic's contractual agreement with the County, wherein North Atlantic agreed to provide security at the Justice Court building, is sufficient to impose liability against North Atlantic and Coleman under Section 1983.

"[M]ere private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (quoting *Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 352 (5th Cir. 2003)); *Ballard v. Wall*, 413 .3d 510, 518 (5th Cir. 2005) ("Private individuals generally are not considered to act under color of law[.]"). Where the defendant is a private actor, "the challenged 'conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State' for Section 1983 to apply." *Doe v. U.S.*, 831 F.3d 309, 314 (5th Cir. 2016) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)). In other words, if there is no conduct "fairly attributable to the State," the Plaintiff's Section 1983 claims must fail. *Id*.

The Supreme Court has utilized several tests for deciding whether a private actor's conduct can be "fairly attributable to the State." *Cornish*, 402 F.3d at 549 (citing *Richard*, 355 F.3d at 352; *Bass v. Parkwood*, 180 F.3d 234, 241-43 (5th Cir. 1999)). In *Cornish*, the Fifth Circuit summarized the various tests:

> The "public function test" examines whether the private entity performs a function which is "exclusively reserved to the State." Under the "state compulsion test," a private actor's conduct is attributable to the State when it exerts coercive power over the private entity or provides significant encouragement. The "nexus" or "state action test" considers whether the State has inserted "itself into a position of interdependence with the private actor, such that it was a joint participant in the enterprise." And, under the "joint action test," private actors will be considered state actors where they are "willful participants in joint action with the State or its agents."

*Id*. at 549-50.

5

In the case at bar, the Plaintiff, recognizing that North Atlantic and Coleman are private actors—unless one of the exceptions applies, makes clear that he is pursuing his Section 1983 claims under the "public function test." *See* [73, p. 5] ("In short, the case before the Court is a sovereign-function (public function) matter[.]"). Sudduth contends that the County had a duty to provide security at the Justice Court and, by accepting this duty, North Atlantic, a private company, and Coleman, a private citizen, can be held liable pursuant to Section 1983. Because the Plaintiff indicates that he is pursuing his claims under the "public function test," the Court will analyze his claims under that test.

"Under the public function test, the court can treat a private actor as a state actor when the private actor performs a function traditionally existing as the *exclusive province of the state*." *Crawford v. Epps*, 2014 WL 2048207 at *4 (N.D. Miss. May 19, 2014) (citing *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989)) (additional citation omitted) (emphasis added). "The public function test has been interpreted narrowly. Only functions like holding elections, exercising eminent domain, and operating a company-owned town, fall under this category of state action." *Chapman v. Higbee Co.*, 319 F.3d 825, 833-34 (6th Cir. 2003). The Sixth Circuit further noted that "[o]ur sister circuits have consistently held that the mere fact that the performance of private security functions may entail the investigation of a crime does not transform the actions of a private security officer into state action." *Id.* at 834 (citing *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1457 (10th Cir. 1995); *White v. Scrivner Corp.*, 594 F.2d 140, 142-43 (5th Cir. 1979)). Additionally, the District Court for the Northern District of Texas explained the narrow scope of the public function test as follows:

> [C]ourts have tended to construe the public function test narrowly. The Supreme Court, for instance, has held that the provision of utility services, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352-54 (197), and "the education of maladjusted high school students,"

6

> *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982), are not within the exclusive province of the state. Correspondingly, the Fifth Circuit has determined that a private volunteer group providing fire protection was not performing an exclusive state function. *See Yeager v. City of McGregor*, 980 F.2d 337, 343 (5th Cir. 1993). Bearing in mind this guidance, the Court concludes that the transportation of disabled individuals is not an exclusive state function. *See Santiago v. Puerto Rico*, 655 F.3d 61, 69-70(1st Cir. 2011) (holding that private company transporting mentally disabled students to and from school was not performing exclusive government function); *Black ex rel. Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 710-11 (3d Cir. 1993) (same for company running school buses); *Arredondo v. Laredo Mun. Transit Sys.*, 581 F.Supp. 868, 878 (S.D. Tex. 1984) (same for company providing mass transportation services).

*Doe I v. Dallas Area Rapid Transit*, 2013 WL 12362889 at *4 (N.D. Tex. Mar. 19, 2013).

Although the facts of this case are not identical to those mentioned above, the Court finds that the provision of security services is no more exclusive to the State than the provision of utility services, the education of maladjusted high school students, and mass transportation, all of which have been found insufficient to meet the burden under the "public function test." In the Court's view, the facts of this case are easily distinguishable from the holding of elections, exercising eminent domain, and operating a company-owned town. The Court also finds telling the fact that the Plaintiff has provided no cases where the provision of services of this nature has been deemed state action.

The Plaintiff's only argument in opposition to this result is that, pursuant to Mississippi Code Section 19-25-69, the sheriff must provide security at the County's Justice Court. However, the Defendants contend that the Plaintiff's argument on this point is misplaced because Section 19-25-69, which, in pertinent part, provides that "the sheriff shall have charge of the courthouse and jail of his county," concerns only county courthouses—not justice court buildings. The Defendants therefore assert that Title 19 of the Code has no applicability whatsoever to justice

courts. To further bolster their argument, the Defendants also emphasize the legislative history of the Justice Court Reform Act of 2008, specifically asserting: "in 2008, when the Justice Court Reform Act of 2008 was passed, it originally included that 'the sheriff' shall provide courtroom security when justice court is in session in accordance with the provision of Section 19-25-69.' S.B. 2571, Miss. Leg. 2008 Reg. Sess. (Miss. March 24, 1999). However, the language was specifically deleted before the Act's effective date via H.B. 925, Miss. Leg. 2008 Reg. Sess. (Miss. May 10, 1999)." [78, p. 2-3] (emphasis omitted).

Ultimately, considering the well-settled narrow scope of the "public function test," the Court finds that neither Coleman nor North Atlantic were state actors. Therefore, they cannot be held liable under Section 1983. *See Cornish*, 402 F.3d at 549. The Plaintiff's Section 1983 claims against North Atlantic and Coleman are dismissed *with prejudice*.

The Plaintiff also asserts a Section 1983 claim against Lowndes County, asserting that the County "adopted an official policy of ignoring the need to provide trained, certified law enforcement officers to discharge law enforcement duties, thereby exposing the Plaintiff and the general public to heightened occurrences of seizures and assaults by means of the use of excessive force, and deprivation of liberty." [42, p. 12]. Sudduth alleges that the County's policy of failing to hire sufficiently trained security officers to protect the Justice Court building constitutes "deliberate indifference and reckless disregard for the health, safety, and welfare of the public, including the Plaintiff." [42, p. 13].

The Court notes that, while the County did file a Joinder [79] stating that it "adopts the assertions, arguments and requests for relief" in Coleman's Reply [78] supporting his Motion to Dismiss, the County did not file a separate request for dismissal. In other words, the County has not made any arguments raising defenses specifically applicable to the claims asserted against it.

Because dismissal has not been requested, the Court will not consider the viability of the Plaintiff's claims against the County at this juncture. The Plaintiff will be permitted to proceed on those claims.

*II.     State Law Claims*

In his Amended Complaint [42], the Plaintiff asserts claims for "assault, battery, wrongful arrest, false imprisonment, outrageous conduct, negligence, gross negligence, and/or recklessness under the laws of the State of Mississippi as to all of the Defendants herein." [42, p. 17, 19]. Coleman has moved for dismissal, averring that "none of the alleged causes of action meets [the mandates set forth by the Court in its previous Order and Memorandum Opinion] with respect to setting out the elements of each cause of action as well as the factual basis for each element." [67, p. 3]. Coleman requests that all of the Plaintiff's state law claims be dismissed because they constitute impermissible "shotgun pleadings." While agreeing that the Plaintiff's pleading as to the state law claims is inartful, the Court declines to dismiss the claims on that ground alone. *See*, *e.g.*, *Brooks v. Firestone Polymers, LLC*, 2014 WL 4792653 at *22 (E.D. Tex. Sept. 24, 2014) ("While Plaintiffs' Amended Complaint is no model of clarity, it outlines facts sufficient to have put [the Defendant] on notice of their . . . claims."). The Court will therefore address Coleman's arguments for dismissal as to each of the Plaintiff's state law claims.

Coleman first asserts that the Plaintiff's claim for wrongful arrest must be dismissed because "the facts of the Complaint only set out 'that he was unlawfully extracted' from the Justice Court. There is no allegation of how he was in 'custody', arrested, restricted from leaving the Justice Court, or a restraint of full liberty – all of which have been considerations with regards to an arrest." [67, p. 3-4]. Coleman also cites criminal cases, such as *State v. Brooks*, 781 So.2d 929, 932 (Miss. Ct. App. 2001), where the Mississippi Court of Appeals held that "[a]n arrest involves

9

detaining or taking a person into custody and subjecting the person to the actual control and will of the officer." [78, p. 3]. The Court finds Coleman's argument on this point to be persuasive. Even taking as true the Plaintiff's allegations, he was not arrested. His claim for wrongful arrest is dismissed *with prejudice*.

Coleman next asserts that, even taking as true the facts asserted by the Plaintiff, he has not stated a claim for false imprisonment. "False imprisonment is an intentional tort comprised of two elements: (1) detention of the plaintiff; and (2) that such a detention was unlawful." *Whitten v. Cox*, 799 So.2d 1, 9 (Miss. 2000) (citing *Wallace v. Thornton*, 672 So.2d 724, 727 (Miss. 1996)). Viewing the evidence in the light most favorable to the Plaintiff, he still has not pled sufficient facts to support a claim for false imprisonment. His Amended Complaint [42] does not assert that he was detained—an essential element of this claim. The Plaintiff's false imprisonment claim is dismissed *with prejudice*.

The Court next turns to the Plaintiff's claim for outrageous conduct, which the Mississippi Supreme Court has recognized as the tort of intentional infliction of emotional distress. *See Donald v. Amoco Prod. Co.*, 735 So.2d 161, 179 (Miss. 1999) ("[I]n Mississippi, this Court has recognized outrageous conduct as a tort more commonly known as the intentional infliction of emotional distress."). In order to prevail on a claim for intentional infliction of emotional distress, the Plaintiff must prove the following elements:

> (1) The defendant acted willfully or wantonly toward the plaintiff by committed certain described actions; (2) the defendant's acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendants; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Orr v. Morgan*, 230 So.3d 368, 375-76 (Miss. Ct. App. 2017) (citations omitted).

Coleman makes no real argument on this point, simply asserting that "the elements of this tort have been ignored by Sudduth." [67, p. 5]. The Court disagrees. In the Court's view, the Plaintiff's Amended Complaint [42], though inartful, sets forth sufficient factual allegations which, if taken as true, at least state a plausible claim for relief as to this tort. The Plaintiff will be permitted to proceed on this claim.

Coleman also requests dismissal of Sudduth's negligence, gross negligence, and recklessness claims. In his Response [73, p. 9], Sudduth admits that his Amended Complaint [42] fails to provide sufficient allegations to support claims for negligence, gross negligence, and recklessness. The Court agrees. These claims are dismissed *with prejudice*.

Coleman lastly addresses the Plaintiff's assault and battery claims. As to these claims, Coleman does not argue that the Plaintiff lacks a basis for these claims but instead argues that the claims should be dismissed because the Plaintiff's Amended Complaint [42] "does not set forth the actual elements of either assault or battery." [67, p. 6]. As noted above, the Court agrees that the Plaintiff's Amended Complaint [42] is inartful. However, the Court declines to dismiss the Plaintiff's claims altogether based on that ground alone. If taken as true, the allegations of the Plaintiff's Amended Complaint [42] are sufficient to support his assault and battery claims. The Plaintiff will therefore be permitted to proceed on these claims.

As noted above, neither North Atlantic nor the County filed separate motions to dismiss, instead only filing Joinders [79, 80] to Coleman's arguments. For the same reasons that the Court dismissed the Plaintiff's claims for wrongful arrest, false imprisonment, negligence, gross negligence, and recklessness against Coleman, the Plaintiff's claims for those torts against North Atlantic and Lowndes County are also dismissed *with prejudice*.[1]

---

[1] For the sake of clarity, the Court notes that it dismisses these state law claims as to the County because it finds that the Plaintiff has failed to properly plead these claims, and the County's Joinder [79] to

Specifically concerning the state law claims against the County, as noted in the Court's previous Order and Memorandum Opinion [40], the Mississippi Tort Claims Act is the exclusive remedy for state law tort claims against a governmental entity. *See* Miss. Code Ann. § 11-46-7. While the County may potentially be entitled to immunity on some of the Plaintiff's claims, it has not specifically raised those defenses, and the Court is not inclined to do so on its own volition.[2] Therefore, the Plaintiff will be permitted to proceed on his state law claims against the County, other than those claims which were previously dismissed.

*Conclusion*

For the reasons set forth above, the Motion [66] is GRANTED IN PART and DENIED IN PART. The Plaintiff's federal claims against North Atlantic and Coleman are dismissed *with prejudice*. However, he will be permitted to proceed on his federal claims against Lowndes County. Further, the Plaintiff's state law claims for wrongful arrest, false imprisonment, negligence, gross negligence, and recklessness are dismissed *with prejudice*, but he will be permitted to proceed on the remaining state law claims as to all three Defendants.

SO ORDERED, on this the 21st day of September, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

Coleman's Motion [66] is sufficient as to those claims. This is distinct from the Plaintiff's federal claims against the County addressed above, where the County's defenses would be different than the defenses raised by Coleman.

[2] Again, the County did file a Joinder [79] to Coleman's Reply [78]. However, Coleman's Reply [78] did not address the applicability of the Mississippi Tort Claims Act, as the Act does not affect the claims asserted against him.